UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-23358-CIV-MOORE/SIMONTON

MARISSA FEIG,

    Plaintiff,

v.

THE APPLE ORGANIZATION, INC.,

    Defendant.
_____/

### ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL

Presently pending before the Court is Plaintiff's Motion to Compel More Complete Discovery Responses and Documents (DE # 25).  All pretrial discovery matters are referred to the undersigned Magistrate Judge (DE # 4).  Defendant filed an expedited response (DE # 28) and a hearing on the motion was held before the undersigned Magistrate Judge on May 29, 2009.  At that hearing, the undersigned ruled on the record and granted the motion, as limited herein.  This Order sets forth those rulings and incorporates by reference the reasons stated on the record.

    I.    **BACKGROUND**

According to the Complaint, Plaintiff, Melissa Feig, began working for Defendant, the Apple Organization, Inc., on February 14, 2007; and, she became pregnant in November 2007.  Plaintiff alleges that she was fired on January 17, 2008, one day after she disclosed her pregnancy to her employer; and, she was told by Defendant's CEO that she was fired based on her complaints that the CFO made inappropriate comments to another female co-worker and her request that the email spam filter be improved to eliminate sexually-explicit spam emails at work.

Plaintiff subsequently filed this lawsuit, alleging that Defendant discriminated

against her on account of her sex (owing to the fact of her pregnancy), in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, as well as the Florida Civil Rights Act of 1993 ("FCRA"), Fla. Stat. § 760.10 (Counts I and III); that Defendant retaliated against her for making complaints regarding sexual harassment in the workplace without taking curative measures, in violation of Title VII and the FCRA (Counts II and IV); and, that Defendant interfered with her ability to exercise her right to a medical leave of absence, in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq*. (Count V).[1]  Plaintiff alleges that these acts caused her to suffer pecuniary losses, as well as emotional distress (DE # 1).

Plaintiff filed the discovery requests that gave rise to the instant motion on January 9, 2009; and, Defendant provided a written response on March 2, 2009 (DE # 25 at 2).  As explained on the record at the hearing, Defendant went out of business in March 2009; and, when it went out of business, it shut down its computer server and sold it to a third party with instructions not to destroy the electronic information stored on its hard drive.

II.   DISCUSSION

Plaintiff is unsatisfied with Defendant's responses to Request for Production ("RFP") Nos. 39, 49 and 50.  Defendant objected to these requests arguing, among other things, that they were overbroad and unduly burdensome to produce.

In RFP No. 39 Plaintiff sought "[a]ll documents relating to any meetings, discussions, encounters, and/or conversations . . . that Defendant or any agents or employees of the Defendant had with Plaintiff for the last three (3) years."

---

[1]  Plaintiff recently voluntarily dismissed Count V (DE # 27).

In RFP No. 49, Plaintiff sought "[a]ll documents relating to Defendant's communications, including correspondence, emails, faxes etc. to and from the Plaintiff."

In RFP No. 50, Plaintiff sought "[a]ll documents relating to Defendant's communications, including correspondence, emails, faxes etc. regarding the Plaintiff."

At the outset, as stated on the record at the hearing, Defendant agrees that emails between Feig and other employees are discoverable; and, according to its attorney, all such emails will be produced, along with any instant message conversations between Ms. Feig and other employees.

Plaintiff explained at the hearing that, although she requested three years' worth of responsive documents, she has agreed to limit her requests so that they only cover documents from the 11 months of her employment, between February 2007 and January 2008.

Plaintiff also explained that, although Defendant expressed concern that the requests for production were drafted broadly enough to include confidential and proprietary documents within its client files, she did not seek any such confidential or proprietary information, but merely documents evincing (1) the identity of Plaintiff's clients during her employment with Defendants; (2) the dates that she worked for each client; (3) the client feedback; (4) Plaintiff's performance evaluations; and (5) any notes or minutes of meetings that Plaintiff had with Defendant's officers, as well as any records of the complaints lodged by Plaintiff.  Defendant noted at the hearing that it has already turned over Plaintiff's entire employee file, and agreed to produce the remaining documentation, if any exists.

The existing dispute centers on whether the emails of other employees, which reference Plaintiff, should be produced.  Though the parties agree that Defendant had 27

employees during Plaintiff's 11-month term of employment, Defendant first argues that the email accounts of low-level employees will not contain any relevant information. The undersigned concludes that Defendant's assertion is meritless because, based on the circumstances of this case, it is likely that Plaintiff's co-workers sent or received information regarding her employment and the reasons for her termination that is reasonably calculated to lead to admissible evidence in this case.

Defendant then argues that, even if the information is relevant, a search of all 27 employees' accounts will constitute an undue burden. According to Defendant, it shut down its server when it went out of business in March 2009; and, its IT specialist has explained that after the email accounts are recreated, it will not be possible to search them by keyword, meaning that Defendant will have to review the emails by hand, by reading every email sent or received by each of its 27 employees over the course of Plaintiff's 11-month term of employment in order to find responsive documents.

The undersigned concludes that Defendant's undue burden argument is not persuasive, assuming that an electronic search of the server data is possible. Defendant's counsel could not represent whether Defendant's IT specialist is a forensic expert; and, the present state of the record does not satisfactorily establish that an electronic search of the 27 employees' email accounts is either impossible or unduly burdensome, in terms of time or expense.[2] The undersigned notes that Defendant made the decision to transfer its data to a server two months after Plaintiff propounded her discovery requests; and, therefore, Defendant's claim that accessing the information is now somewhat more difficult and somewhat more expensive is not compelling.

---

[2] An electronic search for Plaintiff's name (Marissa Feig) is highly likely to return responsive documents and not likely to return a high number of false positive results.

**Nevertheless, if an electronic search is truly impossible, the undersigned agrees with Defendant that scouring the entire server for responsive information by hand constitutes an undue burden. The undersigned acknowledges that Defendant was required to file an expedited response to Plaintiff's motion to compel; and, therefore, Defendant shall be permitted to file a motion for protective order in the event that a forensic computer expert agrees that an electronic search of the server data is not possible, meaning that the server must be scoured document-by-document in order to find the information responsive to Plaintiff's discovery requests. Thus, Plaintiff's motion to compel is granted to the extent that an electronic search of the server data is possible and the parties must confer for the purpose of simplifying the search process and reducing its cost.[3] It is, accordingly,**

**ORDERED AND ADJUDGED that Plaintiff's Motion to Compel (DE # 25) is GRANTED. On or before June 10, 2009, Defendant shall produce the emails sent and received by Plaintiff as well as the other documents specified above that Defendant agreed to produce. On or before June 16, 2009, after conferring with Plaintiff regarding a forensic examination of its server data, Defendant shall provide all other documents within its possession, custody or control that are responsive to Plaintiff's RFP Nos. 39, 49 and 50, which are contained in the email files of the other employees. In the event that an electronic search of the server data is not possible, any motion for protective**

---

[3] **As stated on the record at the hearing, it is likely efficient to conduct this discovery on a rolling basis, beginning with Plaintiff's email account and the email account of Defendant's CFO and corporate representative, Joe Powell, while the parties and forensic computer experts discuss the most efficient and cost-effective way to search the remaining server data.**

**order shall be supported by an affidavit of a forensic computer expert that explains why such a search is not possible.**

      **DONE AND ORDERED** **in chambers in Miami, Florida on May 29, 2009.**

*Andrea M. Simonton*
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies to:
The Honorable K. Michael Moore,
    United States District Judge
All counsel of record